1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BENJAMER F. VILAR,                          No.  2:12-cv-01472-KJN

12                Plaintiff,

13        v.                                      ORDER

14   COUNTY OF YOLO, et al.,

15                Defendants.

16

17        Currently pending before the undersigned is a Motion For Summary Judgment Or Partial

18   Summary Judgment filed by defendant Deputy Sam Machado ("defendant" or "Machado") of the

19   Yolo County Sheriff's Department.[1]  (Mot. for Summ. J., ECF No. 22.)  Defendant filed a

20   Separate Statement of Undisputed Facts ("SUF") (SUF, ECF No. 22-2), a Request for Judicial

21   Notice ("RJN") (RJN, ECF No. 22-3), and an attorney declaration with various exhibits in

22   support of his motion (Declaration of Amie McTavish ("McTavish Decl."), ECF No. 22-4).

23        Plaintiff Benjamer F. Vilar ("plaintiff" or "Vilar") filed a written Opposition brief in

24   response to defendant's pending motion.  (Opp'n, ECF No. 23.)  Plaintiff also filed a Response

25   To Defendant's Separate Statement Of Undisputed Facts ("RSUF") (RSUF, ECF No. 23-1 at 1-

26   
    ---
    [1]  This matter proceeds before the undersigned as a result of the parties' voluntary consent to the

27   jurisdiction of the undersigned for all proceedings in this case, including trial and entry of final
    judgment, and an order dated July 12, 2012 (ECF Nos. 5, 9, 10).  See 28 U.S.C. § 636(c)(1); Fed.

28   R. Civ. P. 73; E.D. Cal. L.R. 301, 305.

                                              1

9), a Statement Of Additional Undisputed Facts ("Pl.'s SUF") (Pl.'s SUF, ECF No. 23-1 at 9-16), and an attorney declaration with supporting exhibits (Declaration of David Anderson ("Anderson Decl."), ECF No. 23-2).

Defendant filed a Reply brief in support of his moving papers (Reply, ECF No. 24), as well as a Response to Plaintiff's RSUF (Def.'s Response to RSUF, ECF No. 24-1) and a Response to Plaintiff's SUF (Def.'s Response To Pl.'s SUF, ECF No. 24-2).

The matter came on for hearing on November 21, 2013. Attorney Amie McTavish appeared on behalf of defendant. Attorney Jonathan Shugart appeared on behalf of plaintiff. The undersigned has fully considered the parties' submissions, oral arguments, and appropriate portions of the record in this case and, for the reasons that follow, grants defendant's motion for summary judgment.

I.     BACKGROUND

On May 31, 2012, plaintiff filed a complaint against several defendants. (Compl., ECF No. 1.) Plaintiff alleged violations of 42 U.S.C. § 1983 and 18 U.S.C. § 1964, and he also included state law claims for false imprisonment, false arrest, negligence, negligence per se, civil conspiracy, battery, intentional infliction of emotional distress, violation of the Bane Act, and violation of the Ralph Act. (Id.)

a.  *Relevant Allegations In Plaintiff's Complaint*

Plaintiff's claims stem from his arrest on November 23, 2010. (Compl. at 3-5.) Plaintiff alleges that on that day, he was playing on a certain slot machine at the Cache Creek Casino and drinking a Styrofoam cup of coffee. (Id. at 3-4.) Plaintiff alleges that after playing on the slot machine for about ten minutes, "his cup of coffee accidentally tipped over, spilling the liquid therein onto an area of the machine near the bill validator device," whereupon he cashed out and left the machine. (Id. at 4.)

An error light on the top of the slot machine started blinking. (Id.) Cache Creek security personnel then allegedly inspected the machine and found coffee in the bill validator. (Id.) Casino personnel then allegedly inspected the security tape footage and determined that plaintiff was the last person playing on that machine and that he "leaned forward" while at the machine prior to

1   leaving it.  (Id.)  The security footage allegedly did not clearly show how the coffee got into the

2   bill validator.  (Id.)

3          Casino security personnel then allegedly found plaintiff on the gaming floor and began

4   questioning him.  (Id. at 5.)  They eventually allegedly asked plaintiff to pay $864.80 to repair the

5   bill validator.  (Id.)  Plaintiff alleges that they did so without confirming that the bill validator

6   actually required repair or replacement.  (Id.)  The Casino personnel then allegedly informed

7   plaintiff that if he did not pay to repair the validator they would have him arrested.  (Id.)  Plaintiff

8   allegedly did not agree to pay this amount, so Casino personnel allegedly placed him in handcuffs,

9   escorted him to a holding cell, and called the County Sheriff's Office.[2]  (Id. at 5-6.)

10         Deputy Machado responded and allegedly questioned plaintiff while he was in the holding

11  area.  (Id.)  Plaintiff alleges that Deputy Machado interrogated him in a manner calculated to

12  mislead and coerced him into making false statements.  (Id.)  Following questioning, Deputy

13  Machado then allegedly arrested plaintiff for vandalism, took him into custody, and brought him to

14  the Yolo County Jail.  (Id.)

15             b.  *Remaining Claims And Parties*

16         Since he filed his pleading, plaintiff has dismissed various claims and defendants through a

17  stipulated dismissal and a written non-opposition, and therefore those claims and defendants are

18  not discussed herein.  (See, e.g., ECF Nos. 20-21, 23 at 23.)

19         For purposes of the pending motion for summary judgment, one defendant currently

20  remains in this case: Deputy Machado.  The remaining federal claims targeting Machado are for

21  violations of 42 U.S.C. § 1983 (Fourth Amendment violation for arrest without probable cause

22  and a Fourteenth Amendment violation for coercive questioning and a falsified police report).

23  The remaining state law claims are for violation of the Bane Act (interference with plaintiff's

24  rights through coercion); common law battery (putting handcuffs on plaintiff without probable

25  cause to arrest him), and false arrest/detention (detaining plaintiff without probable cause).

26  (Compl., ECF, No. 1.)

27  _____

28  [2]  While plaintiff's pleading includes allegations against Casino personnel, claims against the
    Casino and its workers are proceeding in a separate arbitration.  (See ECF No. 12 at 3.)

1    II.       LEGAL STANDARD

2          Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary

3    judgment, identifying each claim or defense — or the part of each claim or defense — on which

4    summary judgment is sought."  It further provides that "[t]he court shall grant summary judgment

5    if the movant shows that there is no genuine dispute as to any material fact and the movant is

6    entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[3]  A shifting burden of proof

7    governs motions for summary judgment under Rule 56.  In re Oracle Corp. Sec. Litig., 627 F.3d

8    376, 387 (9th Cir. 2010).  In summary judgment practice, the moving party:

9           always bears the initial responsibility of informing the district court
            of the basis for its motion, and identifying those portions of "the
10          pleadings, depositions, answers to interrogatories, and admissions
            on file, together with the affidavits, if any," which it believes
11          demonstrate the absence of a genuine issue of material fact.

12   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

13   56(c)).  "Where the non-moving party bears the burden of proof at trial, the moving party need

14   only prove that there is an absence of evidence to support the non-moving party's case."  In re

15   Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R.

16   Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does

17   not have the trial burden of production may rely on a showing that a party who does have the trial

18   burden cannot produce admissible evidence to carry its burden as to the fact").

19         If the moving party meets its initial responsibility, the opposing party must establish that a

20   genuine dispute as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith

21   Radio Corp., 475 U.S. 574, 585-86 (1986).  To overcome summary judgment, the opposing party

22   must demonstrate the existence of a factual dispute that is both material, i.e., it affects the

23   outcome of the claim under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S.

24   242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d

25   1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such that a reasonable jury could

26

27   _____
     [3] Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10, 2010.
     However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56, "[t]he
28   standard for granting summary judgment remains unchanged."

1  return a verdict for the nonmoving party,'" FreecycleSunnyvale v. Freecycle Network, 626 F.3d

2  509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).  A party opposing summary

3  judgment must support the assertion that a genuine dispute of material fact exists by: "(A) citing

4  to particular parts of materials in the record, including depositions, documents, electronically

5  stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers,

6  or other materials; or (B) showing that the materials cited do not establish the absence or presence

7  of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the

8  fact."[4]  Fed. R. Civ. P. 56(c)(1)(A)-(B).  However, the opposing party "must show more than the

9  mere existence of a scintilla of evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing

10  Anderson, 477 U.S. at 252).

11      In resolving a motion for summary judgment, the evidence of the opposing party is to be

12  believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that may be drawn

13  from the facts placed before the court must be viewed in a light most favorable to the opposing

14  party.  See Matsushita, 475 U.S. at 587; Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963,

15  966 (9th Cir. 2011).  However, to demonstrate a genuine factual dispute, the opposing party

16  "must do more than simply show that there is some metaphysical doubt as to the material facts

17  . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-

18  moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87 (citation

19  omitted).

20      III.   DISCUSSION

21          a.  *Fourth Amendment Claim*

22      Defendant Machado argues that the undisputed material facts demonstrate that, as a matter

23  of law, he had probable cause to arrest plaintiff for felony vandalism.  (Mot. for Summ. J. at 3-4.)

24      Probable cause to arrest is "knowledge or reasonably trustworthy information sufficient to

25  lead a person of reasonable caution to believe an offense has been . . . committed by the person

26  _____

27  [4] "The court need consider only the cited materials, but it may consider other materials in the
record."  Fed. R. Civ. P. 56(c)(3).  Moreover, "[a] party may object that the material cited to
support or dispute a fact cannot be presented in a form that would be admissible in evidence."

28  Fed. R. Civ. P. 56(c)(2).

being arrested."  Harper v. City of Los Angeles, 533 F.3d 1010, 1022 (9th Cir. 2008) (quoting United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007)).  Probable cause to arrest exists if, at the time of the arrest, the facts and circumstances known to the officer through reasonably trustworthy information would suggest to a prudent person a fair probability the suspect had committed a crime.  Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007).  Crimes with "specific intent" elements require the arresting officer to have probable cause as to this element prior to making the arrest.  Rodis v. City and County of San Francisco, 558 F.3d 964, 970 (9th Cir. 2009) ("when specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred.")

Felony vandalism occurs when a person "maliciously" causes over $400 of "damage" to someone else's property.  Cal. Penal Code § 594 (hereinafter sometimes the "vandalism statute").  Someone acts "maliciously" when he intentionally does a wrongful act or when he acts with the unlawful intent to annoy or injure someone else.  Cal. Penal Code § 7.

> b. *The Undisputed And Disputed Facts*

On a summary judgment motion, the undersigned can determine whether probable cause existed only by looking at the *undisputed facts* to ascertain whether, at the time of the arrest, the facts and circumstances known to defendant would suggest to a prudent person a fair probability that plaintiff had committed a crime.  See Blankenhorn, 485 F.3d at 471.  In this particular case, however, a dispute of material fact exists that prevents entry of summary judgment as to the existence of probable cause.

To be sure, there are a number of "undisputed" facts in this case.  For instance, it is undisputed that Machado had the following information at the time he arrested plaintiff:

- Casino Security Supervisor Donald Nolan ("Nolan") told Machado that a slot machine had been damaged by coffee being poured into it.  (SUF No. 1; RSUF No. 1.)

- Nolan told Machado that plaintiff had admitted to spilling the coffee, but claimed it was an accident.  (SUF No. 3; RSUF No. 3.)

1    •    Machado had received information from Nolan in the past and believed him to be

2         reliable.  (SUF No. 2; RSUF No. 2.)

3    •    Nolen told Machado that the damage to the machine was worth over $800.  (SUF

4         No. 4; RSUF No. 4.)

5    •    Machado viewed the security footage and thereafter decided to question plaintiff.

6         (SUF No. 5; RSUF No. 5.)

7    •    Machado is POST-certified and has conducted hundreds of interrogations. (SUF

8         No. 6, RSUF No. 6.)

9    •    Plaintiff told Machado that he was "upset and frustrated because he was losing

10        money at the casino."  (SUF No. 10; RSUF No. 10.)[5]

11   •    Plaintiff told Machado that the spill was an accident.  (Pl.'s SUF No. 37, Def.'s

12        Response to Pl.'s SUF No. 37.)

13       Further, the videotaped interrogation has been filed as evidence, and it shows Machado

14   questioning plaintiff and plaintiff responding to questions.  (Exh. E to McTavish Decl.

15   (videotaped recording of defendant's interrogation of plaintiff, sometimes hereinafter referred to

16   as the "Video").)  Neither party has disputed the Video's accuracy or otherwise objected to it;

17   indeed, both parties have cited to it as support for their respective arguments.

18       Defendant's own statement of undisputed material facts reveals that defendant believes it

19   both "material" to the probable cause claim and "undisputed" that plaintiff "told [defendant] that

20   he was responsible for the coffee in the machine," and that plaintiff "admitted" that he "poured

21

_____

22   [5]  Defendant's SUF No. 10 states that plaintiff told Machado that he was "responsible for the
     coffee in the machine and that he was upset and frustrated because he was losing money"
23   gambling, but plaintiff disputes this fact (RSUF No. 10).  The only actual "dispute" about this
     particular fact, however, is whether plaintiff stated that he was "responsible for" the coffee in the
24   machine.  (RSUF No. 10 (quoting Video verbatim).)  In other words, plaintiff proffered no
     evidence reasonably rendering "disputed" the remaining portion of this "fact," i.e., that plaintiff
25   stated he was "upset and frustrated because he was losing money."  Plaintiff's cited portions of
     the Video do not undermine or conflict with defendant's evidence that plaintiff stated that he was
26   "upset and frustrated" at "losing money."  Accordingly, the court treats as "undisputed" the
     portion of SUF No. 10 indicating that plaintiff stated that he was "upset and frustrated" at "losing
27   money."  The court treats as "disputed" the portion of SUF No. 10 indicating that plaintiff stated
     he was "responsible for" the spill.
28

1   coffee into the machine" because he was "losing money" at the casino.  (SUF Nos. 10-11 (citing

2   Declaration of Sam Machado ("Machado Depo.") ECF No. 22-8 ¶¶ 25-26.)

3         However, plaintiff's response to defendant's separate statement confirms that plaintiff

4   directly disputes both these facts.  Plaintiff identifies evidence indicating that plaintiff did *not*

5   undisputedly tell defendant that he "was responsible" for the spill, and did *not* undisputedly

6   "admit" that he purposefully "poured coffee into the machine" because he was "losing money" on

7   it.  (RSUF Nos. 10-11 (quoting verbatim a relevant portion of the Video).)  Plaintiff argues that

8   he never confessed or admitted to purposefully spilling the coffee, claiming that at most he told

9   Machado that the spill was "an accident."  (RSUF No. 10.)  Plaintiff also argues that when

10  Machado asked him whether he did it "because he was upset," plaintiff said "no."  (RSUF Nos.

11  10-11 (quoting Video verbatim).)  Plaintiff argues that Machado asked: "Makes it worse?  Is that

12  why you spilled the coffee in the machine?" to which plaintiff said nothing, then Machado said

13  "Hello . . . ?" and plaintiff said "yeah."  (Id. (quoting Video verbatim).)  As plaintiff argues, it is

14  unclear from the Video whether plaintiff intended his "yeah" as a response to Machado's

15  "Hello…?" prompt, or intended his "yeah" as a response to Machado's preceding question.  (Id.)

16        In short, there is a factual dispute regarding whether plaintiff confessed or "admitted" to

17  purposefully spilling coffee on the slot machine because he was upset about losing money, and

18  defendant has framed that alleged confession as "material" to the existence of probable cause.

19  (See SUF Nos. 10-11.)  While there might otherwise be doubts about whether an actual

20  confession is truly necessary or "material" to the existence of probable cause in this case, the fact

21  that defendant's own Separate Statement frames that fact as "material" essentially thwarts that

22  argument.  (Id.)  Accordingly, given that there is a dispute of material fact as to whether plaintiff

23  actually admitted to purposefully pouring coffee on the machine out of frustration, the

24  undersigned cannot find as a matter of law that probable cause existed for plaintiff's arrest.[6]

_____

25  [6]   The parties also briefed the issue of whether defendant is entitled to a "presumption" of

26  probable cause given that the district attorney ultimately decided to prosecute the case, and also
    given that the trial judge permitted the case to go to a jury.  (See Mot. for Summ. J. at 5-8; Opp'n

27  at 14-16; Reply at 10.)   Defendant's Request for Judicial Notice includes documents confirming
    that the district attorney prosecuted the case and the trial judge allowed the case to go to the jury.

28  (RJN, ECF No. 22-3.)  However, given the genuine dispute about a fact that defendant has framed

1

       c. *Qualified Immunity*

2

            i. <u>Background On The Two-Prong Test</u>

3

      The Supreme Court has instructed district courts not to delve into constitutional questions

4

— such as determining as a matter of law that the facts as plaintiff has shown them do or do not

5

make out a violation of a constitutional right (i.e., here, determining that probable cause did or did

6

not exist on the facts as Machado knew them, and without a clear confession) — where the courts

7

can instead resolve the case based upon whether qualified immunity protects the arresting officer

8

given that the contours of the constitutional right at issue are not "clearly established." <u>See</u>

9

<u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2080 (2011) ("Courts should think carefully before

10

expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or

11

statutory interpretation that will 'have no effect on the outcome of the case.'")  "[C]ourts may

12

grant qualified immunity on the ground that a purported right was not 'clearly established' by

13

prior case law, without resolving the often more difficult question whether the purported right

14

exists at all.  This approach comports with our usual reluctance to decide constitutional questions

15

unnecessarily." <u>Reichle v. Howards</u>, 132 S. Ct. 2088, 2093 (2012) (citations omitted).

16

      In <u>Pearson</u>, the Supreme Court held that district courts should proceed to the second prong

17

of the qualified immunity analysis rather than unnecessarily decide constitutional questions, like

18

whether the facts plaintiff has presented amount to a violation of the Fourth Amendment as a

19

matter of law.  <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009).  According to <u>Pearson</u>, originally,

20

21

22

23

24

> "[i]n <u>Saucier</u>, 533 U.S. 194, 121 S. Ct. 2151, this Court mandated a two-step sequence for resolving government officials' qualified immunity claims.  First, a court must decide whether the facts that a plaintiff has . . . shown (<u>see</u> Rules 50, 56) make out a violation of a constitutional right.  Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.  Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right."

25

<u>Id.</u> (citing <u>Saucier v. Katz</u>, 533 U.S. 194) (other citations omitted).

26

27

28

as "material" to the claim, summary judgment as to the existence of probable cause is inappropriate, and it is therefore unnecessary to address legal/factual arguments regarding a "presumption" potentially triggered by actions of the district attorney and trial judge in the criminal action.  Accordingly, the undersigned denies defendant's RJN as moot.  (ECF No. 22-3.)

1    In modifying the <u>Saucier</u> protocol to allow district courts to examine first whether the

2    contours of the right at issue were "clearly established," the Supreme Court reasoned that: "There

3    are cases in which it is plain that a constitutional right is not clearly established but far from

4    obvious whether in fact there is such a right." <u>Id.</u> at 237.  In such cases, district courts should

5    reach the "clearly established" prong of <u>Saucier</u> first, so as to prevent "unnecessary" and

6    "academic" determinations about the first prong of <u>Saucier</u>.  <u>Id.</u>  Moreover, the Supreme Court

7    has cautioned against reaching the "constitutional question" (i.e., the first prong of <u>Saucier</u>) where

8    such a question "rest[s] on an uncertain interpretation of state law" or "requires clarification of an

9    ambiguous state statute."  <u>Id.</u> at 238.  The Supreme Court reminded district courts to adhere to the

10   "general rule of constitutional avoidance" and to avoid reaching the "constitutional question" if

11   possible.  <u>Id.</u> at 241.

12   In <u>Pearson</u>, the Supreme Court held that the defendants were "entitled to qualified

13   immunity because the entry did not violate clearly established law [showing that the search

14   violated the Fourth Amendment.]"  <u>Id.</u> at 243.  The court did not make a determination as to the

15   first prong of <u>Saucier</u>, resolving the case on the second prong alone.  <u>Id.</u> at 245 ("Because the

16   unlawfulness of the officers' conduct in this case was not clearly established, petitioners are

17   entitled to qualified immunity.  We therefore reverse the judgment of the Court of Appeals.");

18   <u>accord</u> <u>James v. Rowlands</u>, 606 F.3d 646, 650-51 (9th Cir. 2010) (citing <u>Pearson</u>, 129 S. Ct. at

19   818).  In <u>Pearson</u>, "the Supreme Court . . . gave courts discretion to grant qualified immunity on

20   the basis of the 'clearly established' prong alone, without deciding in the first instance whether

21   any right had been violated."  <u>James</u>, 606 F.3d at 651 (citing <u>Pearson</u>, 129 S. Ct. at 818); <u>see also</u>

22   <u>al-Kidd</u>, 131 S. Ct. at 2080 ("lower courts have discretion to decide which of the two prongs of

23   qualified-immunity analysis to tackle first").

24   The same sort of analysis makes sense in this case.  Rather than determining whether the

25   facts as plaintiff has shown them make out a violation of a constitutional right (i.e., finding that

26   an officer knowing what Machado knew — and disregarding plaintiff's "disputed" confession —

27   amounts to insufficient probable cause for a vandalism arrest as a matter of law), this court can

28   and should avoid making this constitutional determination, just as it can and should avoid

deciding "uncertain" issues of state law, such as whether vandalism is actually a "specific intent" crime.[7]  The court will thus proceed instead to the "easier" qualified immunity analysis and directly to the second prong of that analysis, i.e., whether the contours of the right were "clearly established" at the time of plaintiff's arrest.  See Pearson, 555 U.S. at 244; al-Kidd, 131 S. Ct. at 2080-84; Blankenhorn, 485 F.3d at 476 (citing Meyers v. Redwood City, 400 F.3d 765, 770 (9th Cir. 2005) (addressing the "easier question of qualified immunity")).

Based on the foregoing authority, the appropriate inquiry is whether the second prong of the Qualified Immunity is satisfied.

ii.   Whether The Contours Of The Right Were "Clearly Established"

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"  al-Kidd, 131 S. Ct. at 2083-84 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.  When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Id. at 2085.  "The plaintiff bears the burden to show that the

---

[7] California Penal Code § 594 requires that the "damage" to the "property" must have been done "maliciously," and California Penal Code § 7 defines "maliciously" in part as having "intentionally done a wrongful act" or acting with the "unlawful intent to annoy or injure" someone.  While the crime of vandalism has an "intent" element, however, neither statute expressly defines that element as a "specific intent" element or a "general intent" element.  "[W]hen specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred."  Rodis, 558 F.3d at 970.  Thus, for the undersigned to determine whether sufficient probable cause existed as a matter of law in this case, he would first have to determine whether vandalism under California Penal Code § 594(a) is truly a "specific intent" crime — yet this is unclear from the text of the statute, and district courts are split on the issue.  Compare Meas v. City and County of San Francisco, 681 F. Supp. 2d 1128, 1136 (N.D. Cal. 2010) (granting summary judgment for defendant and treating felony vandalism as lacking a "specific intent" element, citing California Supreme Court cases clarifying that use of the term "malicious" in a criminal statute "does not transform the offense into a specific intent crime," such that the arresting officer did not need probable cause as to plaintiff's specific intent prior to arresting for vandalism) with Burdett v. Reynoso, No. C-06-00720 JCS, 2007 WL 2429426, at *20 (N.D. Cal. 2007) (unpublished) (treating felony vandalism as a "specific intent" crime and requiring arresting officer to have probable cause as to such intent prior to arrest).

1    contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d

2    1091, 1109 (9th Cir. 2011).

3        The Supreme Court has cautioned that courts should afford "deference to the judgment of

4    reasonable officers on the scene" and should not use "20/20 hindsight vision." Saucier, 533 U.S.

5    at 205.  Thus, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that

6    probable cause is present are entitled to immunity.'" Hunter v. Bryant, 502 U.S. 224, 227 (1991)

7    (citing Mitchell v. Forsyth, 472 U.S. 511 (1985)).  "The protection of qualified immunity applies

8    regardless of whether the government official's error is a mistake of law, a mistake of fact, or a

9    mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231 (internal quotation

10   marks omitted). "Whether the law was clearly established is an objective standard; the

11   defendant's subjective understanding of the constitutionality of his or her conduct is irrelevant."

12   Clairmont, 632 F.3d at 1109.

13       Finally, while the existence of disputed material facts prevents the issue of qualified

14   immunity from being decided upon summary judgment[8], the court can assess whether the

15   defendant is entitled to qualified immunity as a matter of law on the basis of *undisputed facts*,

16   and, where the facts are disputed, *by accepting plaintiff's version of events*. E.g., LaLonde v.

17   County of Riverside, 204 F.3d 947, n.10 (9th Cir. 2000) (finding that district court adjudicating

18   summary judgment motion "should have determined whether the officers were entitled to

19   qualified immunity as a matter of law on the basis of undisputed facts and, where material facts

20   were disputed, on the plaintiff's version of events."); Blankenhorn, 485 F.3d at 477 (holding that,

21   "[w]here such [factual] disputes exist, summary judgment is appropriate only if Defendants are

22   entitled to qualified immunity on the facts as alleged by the non-moving party.")

23   _____

24   [8]  Plaintiff urged application of this principle during the hearing and in his papers, citing Sloman
     v. Tadlock, 21 F.3d 1462, 1468 (9th Cir. 1994) (holding that a properly-instructed jury can decide
25   the reasonableness of officer's conduct in light of factual context in which it takes place).
     However, in resolving the issue of qualified immunity, the court views the evidence in the light
26   most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.
     Accordingly, here the court resolves the issue of plaintiff's disputed confession in plaintiff's
27   favor, and *assumes for purposes of the qualified immunity analysis that plaintiff did not confess to
     purposefully spilling the coffee*. Thus, plaintiff's disputed "confession" drops out of the analysis,
28   and the court proceeds upon the set of remaining facts that are undisputed and that were known to
     defendant at the time of the arrest.

1            1.  *Plaintiff Frames The "Clearly Established" Analysis Too Broadly*

2          "[T]he right allegedly violated must be defined at the appropriate level of specificity

3    before a court can determine if it was clearly established."  Wilson v. Layne, 526 U.S. 603, 615

4    (1999).  The inquiry as to this question must be "particularized."  Saucier, 533 U.S. at 201, 121.

5    It is not enough that the general rule is established.  Id.  "Whether a right is clearly established for

6    purposes of qualified immunity is an inquiry that must be undertaken *in light of the specific*

7    *context of the case, not as a broad general proposition*.  In other words, [t]he contours of the right

8    must be sufficiently clear that a reasonable official would understand that what he is doing

9    violates that right."  Blankenhorn, 485 F.3d at 476 (emphasis added) (internal quotation marks

10   and citations omitted).  "The relevant dispositive inquiry in determining whether a right is clearly

11   established is whether it would be clear to a reasonable officer that his conduct was unlawful *in*

12   *the situation he confronted*."  Saucier, 533 U.S. at 202 (emphasis added).  Although the Supreme

13   Court does "not require a case directly on point" to define the right at issue and the violation of

14   that right, "existing precedent must have placed the statutory or constitutional question beyond

15   debate."  al-Kidd, 131 S. Ct. at 2083; see also Reichle, 132 S. Ct. at 2093.

16         Plaintiff's Opposition brief assumes that the "clearly established" prong is satisfied in this

17   case, but it is not.  Plaintiff states that it is undisputed that plaintiff had a "clearly established right

18   under the Fourth Amendment not be arrested for vandalism without probable cause." (Opp'n  at

19   19.)  In reality, plaintiff's invocation of the "general proposition" that "an unreasonable search or

20   seizure violates the Fourth Amendment" is too general to amount to a meaningful analysis of the

21   "clearly established law."  See al-Kidd, 131 S. Ct. at 2084.  The proper, more focused analysis of

22   whether the contours of the right were "clearly established" requires the undersigned to ask

23   whether, at the time of the challenged conduct, the contours of the right were "sufficiently clear"

24   such that "every reasonable official would have understood that" arresting plaintiff for vandalism

25   based upon *the undisputed facts that Machado knew* necessarily violates that right.  See id. at

26   2083-84 (internal quotation marks omitted).

27         Contrary to plaintiff's suggestion, then, the issue is not broadly whether plaintiff had a

28   "clearly established" right to be arrested only with probable cause — of course he does.  The

13

1    issue is likewise not whether Machado improperly arrested plaintiff based upon an equivocal

2    "confession" despite subjectively believing that he needed a confession prior to the arrest — the

3    officer's subjective beliefs are of no moment in this analysis.  See Clairmont, 632 F.3d at 1109

4    (the defendant's "subjective understanding of the constitutionality of his or her conduct is

5    irrelevant") (quoting Fogel v. Collins, 531 F.3d 824, 833 (9th Cir. 2008)).  Instead, the issue is

6    whether "the contours of" such right were sufficiently clear such that "every reasonable official"

7    see al-Kidd, 131 S. Ct. at 2083-85, would have understood that the right was necessarily violated

8    by arresting plaintiff for vandalism in light of the undisputed facts known to Machado.

9         1.   *Plaintiff Has Not Shown The Contours Of The Particularized Right*
10             *To Be So "Clearly Established" That Every Reasonable Official*
               *Would Have Known That Arresting Plaintiff In The Situation*
               *Machado Confronted (i.e., On The Undisputed Facts Known To*
11             *Machado) Would Violate Plaintiff's Rights*

12            Here, plaintiff has not shown that the contours of the right were so "clearly established"

13   that every reasonable officer, knowing the undisputed facts known to Machado prior to the arrest,

14   would know that arresting plaintiff for vandalism based upon those facts would necessarily

15   violate plaintiff's rights.

16            First, Plaintiff has not identified a single analogous case — even though it is plaintiff's

17   burden to do so.  See Clairmont, 632 F.3d at 1109.  Plaintiff's briefing focuses solely on the lack

18   of a clear "confession" from plaintiff, yet plaintiff has not identified a single analogous case

19   involving an arrest where the court determined that the arresting officer needed "more" than

20   Machado had — i.e., a clearer confession or other evidence — in order to satisfy the "intent"

21   element of a crime for probable cause purposes.  Likewise, plaintiff has not identified a single

22   analogous case involving an arrest where a court found it "clearly established" that an officer

23   violates the Fourth Amendment by arresting a suspect without a confession from that suspect.

24            At most, plaintiff discusses the Grandberry and Rodriguez[9] cases (Opp'n at 12-14), which

---

25   [9]   United States v. Rodriguez, 518 F.3d 1072, 1075 (9th Cir. 2008).  In Rodriguez, after

26   Mirandizing the suspect, the suspect said "I'm good for tonight" and the officer understood this to
     mean that the suspect was willing to speak without an attorney present.  Id. at 1075.  The court

27   held that this statement was ambiguous and that the officer had a duty to clarify what the suspect
     meant before questioning him without counsel.  Id.  While Rodriguez supports plaintiff's

28   arguments that an officer should attempt to clarify a suspect's ambiguous statements, it does not

1   illustrate the pitfalls of ambiguous police interrogation questions and answers, but do not

2   otherwise speak to the quantum of *other evidence* an arresting officer must have to establish

3   probable cause where the suspect responds ambiguously to interrogation questions.  In

4   Granberry, officers questioned the suspect in an ambiguous way (stating that the officers were

5   "going to search your place" but not specifying an address), the suspect responded in an

6   ambiguous way ("do what you gotta do"), and the officers improperly took his response as a

7   consent to a search of a residence that turned out not to be the suspect's residence.  U.S. v.

8   Granberry, 730 F.3d 968, 975-80 (9th Cir. 2013).  Plaintiff highlights the fact that the

9   questioning officers failed to ask follow-up or clarification questions before conducting the search

10  of the residence, emphasizing that the Court of Appeals held that a motion to suppress was

11  properly granted.  (Opp'n at 13.)  Yet the court in Granberry also analyzed the ambiguous

12  questions and responses as one of four factors in the probable cause analysis applicable to the

13  search of a residence, confirming that — contrary to plaintiff's suggestion — probable cause can

14  be determined by a number of factors, not solely a suspect's admissions.[10]

15         Contrary to plaintiff's reading, Granberry does not require that an arresting officer

16  always obtain a suspect's clear confession prior to arrest.  And while the case suggests that a

17  suspect's equivocal statement might not strongly support the existence of probable cause, the case

18  also confirms that *other evidence* and "facts" known to the arresting officer may nonetheless

19  support probable cause.  Id. at 978-80 (examining other "facts" known to the arresting officers,

20  such as whether the officers observed the suspect at his actual reported residence, the frequency

21  that officers observed the suspect at the address in question, whether the officers "had directly

22  observed something that gave them good reason to suspect that the parolee was using his

23  ─────────────────────────────────────

24  truly inform the "probable cause" analysis in this case, in that it does not speak to the quantum of evidence necessary to establish probable cause in cases where a suspect may have equivocally confessed but where there is *other evidence* potentially sufficient to establish probable cause even

25  when the equivocal confession is disregarded.

26  [10]   See Granberry, 730 F.3d at 976-77 (describing the various factors to be analyzed when

27  officers are deciding whether probable cause exists to search a residence, and explaining that "[t]hese factors are viewed cumulatively rather than independently for purposes of assessing

28  probable cause as to residence.")

1   unreported residence as his home base," and whether the suspect used a key to enter the

2   residence).

3        While plaintiff focused on <u>Grandberry</u> and his argument that probable cause always

4   requires clear interrogation questions and responses, he did not analogize to cases involving

5   arrests that were not precipitated by confessions at all.  Here, plaintiff's disputed "confession"

6   drops out of the analysis, and the court is left to look to other, undisputed facts that may have led

7   the arresting officer to believe probable cause existed.  Plaintiff has not described cases involving

8   arrests for vandalism (or any crime) that did not involve confessions but involved other "intent"

9   evidence.  Plaintiff has not shown that the contours of his right were so clearly established that

10  every reasonable officer would know that arresting plaintiff for vandalism (based solely upon the

11  undisputed facts as Machado knew them prior to the arrest) would violate plaintiff's rights.  <u>See</u>

12  <u>al-Kidd</u>, 131 S. Ct. at 2083-85.

13                    *a.  Plaintiff Has Also Not Shown That It Is "Clearly*
                          *Established" That Vandalism Is A "Specific Intent" Crime*
14

15        Plaintiff argues that, without a clear confession, defendant lacked evidence to support

16  probable cause as to the "specific intent" element of vandalism.  (Opp'n at 9 (citing <u>Burdett</u>, 2007

17  WL 2429426, at *20).)  However, district courts in the Ninth Circuit have not uniformly agreed

18  that vandalism is a "specific intent" crime.  <u>Compare</u> <u>Burdett</u>, 2007 WL 2429426 at *20 (treating

19  felony vandalism as a "specific intent" crime and requiring arresting officer to have probable

20  cause as to such intent prior to arrest) <u>with</u> <u>Meas</u>, 681 F. Supp. 2d at 1136 (granting summary

21  judgment for defendant and treating felony vandalism as *lacking* a "specific intent" element and

22  citing California Supreme Court cases clarifying that use of the term "malicious" in a criminal

23  statute "does not transform the offense into a specific intent crime," such that the arresting officer

24  did not need probable cause as to plaintiff's specific intent prior to arresting for vandalism).[11]  If

---

[11]   District courts in the Ninth Circuit have also recognized vandalism as a "general intent" crime
25   outside the contexts of probable cause and qualified immunity.  <u>See</u>, <u>e.g.</u>, <u>Wallace v. Marshall</u>,
26   No. C–06–01721–VRW, 2009 WL 2380096, at *27 (E.D. Cal. July 31, 2009) (unpublished)
     ("vandalism [is a] general intent crime[] where voluntary intoxication is not a defense."); <u>Bernal</u>
27   <u>v. Gonzalez</u>, No. EDCV 10-0867-JFW (RNB), 2010 WL 3743676, at *8 (C.D. Cal. Sept. 3, 2010)
28   (unpublished) (noting that jury was instructed that vandalism "required general criminal intent"

the courts themselves cannot agree as to what quantum of "intent" evidence amounts to probable

cause for a vandalism arrest, it cannot be said that every arresting officer would consider an arrest

based upon the *undisputed facts and circumstances as Machado knew them* as necessarily

violating "clearly established" law.[12]

> **b. Plaintiff Has Not Shown That It Is Clearly Established Under Existing Precedent That An Arrest For Vandalism Must Be Premised Upon An Unequivocal Confession Or A Particular Quantum Of "Intent" Evidence**

Moreover, although plaintiff did not discuss these authorities, several district courts have

examined qualified immunity and probable cause in cases involving vandalism arrests not

premised upon a confession.  See Meas, 681 F. Supp. 2d at 1136; Burdett, 2007 WL 2429426, at

*20; Cashman ex rel. Hilgeman v. San Diego Unified Sch. Dist., 08CV0519 AJB POR, 2011 WL

5413333, at *1-4 (S.D. Cal. Nov. 8, 2011) (unpublished).

### i.  Meas

In Meas, the plaintiff was arrested for vandalism for kicking a police car after it bumped

him from behind and caused him to stumble while he and his friends were exiting a night club as

part of a large crowd spilling into the street.  Meas, 681 F. Supp. 2d at 1136.  The plaintiff argued

that while he admittedly kicked the car intentionally, he did not do so "maliciously" as required

by the vandalism statute, such that there was no probable cause for his arrest.  Id. at 1135-36.

Plaintiff argued that he "was shocked when he was hit by the police car" and that he "kicked the

vehicle only to inform the driver that he had been hit," and not out of any malicious "desire to

cause harm," and moreover, that plaintiff did not outwardly "express any animus, anger," or

---

while other crimes, like attempted grand theft, required "specific intent").  Yet the California Supreme Court has confirmed — also in other contexts — that vandalism requires a "mens rea of malice," which "calls for more than mere intentional harm without justification or excuse" such that vandalism is a crime of moral turpitude.  People v. Campbell, 23 Cal. App. 4th 1488, 1493 (1994).)

[12] "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law.  Police officers are entitled to rely on existing lower court cases without facing personal liability for their actions."  Pearson, 555 U.S. at 245. "[I]f judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.'"  Id.

wanton or willful disregard, nor did he "yell anything at the car" that would have evidenced an intent to cause damage, such that the arresting officers lacked probable cause to arrest him. Id. The vandalism charges against the plaintiff were ultimately dismissed. Id. at 1133.

In granting defendants' summary judgment motion and finding both probable cause to arrest and qualified immunity, the court treated vandalism as a "general intent" crime and did not require that the arresting officer have probable cause as to the plaintiff's "intent" prior to the arrest. Id. at 1135-37. In finding that there was probable cause to arrest, the court ignored plaintiff's argument that the officers improperly arrested him without probable cause as to his "intent" just because they had not seen plaintiff yell at the car or outwardly express a desire to cause damage. Id. Similarly, in finding qualified immunity as to the vandalism arrest, the court rejected plaintiff's argument that his kicking the vehicle "cannot be considered vandalism because he did not intend to cause damage to" the vehicle. Id. at 1139 (emphasis added). The court concluded that "at the time of the arrest, it was not clearly established that witnessing someone intentionally kicking a police vehicle and causing damage was insufficient to create probable cause for arrest." Id.

Relevant here, the Meas opinion indicates that courts have upheld vandalism arrests in cases without a "confession" from the suspect — there, the suspect admitted to having intentionally kicked the car, but did not confess to having *intended* to cause damage. See id. Meas also indicates that courts have found probable cause for vandalism arrests in cases where the plaintiff argues that the arresting officers lacked sufficient evidence of "intent" to cause damage given that the plaintiff did not outwardly display such intent prior to arrest. Id. Meas thus undermines plaintiff's arguments that Machado needed a clear "confession" from plaintiff and/or needed to observe some other outward display of intent to cause damage in order to arrest him for "maliciously" damaging property under the vandalism statute. See id.

### i. Burdett

In Burdett, the plaintiff brought an action against officers of the San Francisco Police Department for, among other things, violation of 42 U.S.C. § 1983 and unlawful arrest following the plaintiff's alleged vandalism of a police motorcycle that was knocked over during a chaotic

1   anti-war demonstration.  Burdett, 2007 WL 2429426, at *1, *6.

2        In seeking summary judgment on his federal claim for unlawful arrest, the plaintiff argued

3   that "[d]efendants never had probable cause for any of the charges they leveled against [him], and

4   their custodial arrest of him was therefore false as a matter of law."  Id. at *7.  There was a

5   dispute of fact as to whether any officers actually observed plaintiff knocking over the police

6   motorcycle.  Id.  The plaintiff argued that the officers lacked probable cause to arrest him for

7   vandalism because a video recording of the events showed that: (1) the defendants could not have

8   seen the plaintiff knock over the motorcycle; (2) the motorcycle fell toward the plaintiff and not

9   away as if the plaintiff had pushed the motorcycle; and (3) any suspicion created by the plaintiff's

10  proximity to the fallen motorcycle would have dissipated if the officers properly investigated

11  further.  Id.

12       The court found that, given the disputed material facts, the video could be interpreted in

13  plaintiff's favor to show that the officer did not actually "see plaintiff knock over the

14  motorcycle," such that summary judgment could not be granted as to the existence of probable

15  cause to arrest plaintiff for vandalism.  Id. at 20-21.  However, the court found that the arresting

16  officers were protected by the doctrine of qualified immunity, stating that "[i]t is apparent from

17  the evidence that the situation was chaotic and that not all protesters were complying with police

18  orders," adding that "some [protestors] . . . appeared to be intentionally interfering with the

19  officer's efforts to maintain order."  Id.  The court found that the officers were entitled to

20  qualified immunity for the arrest even assuming they only saw plaintiff *after* the motorcycle had

21  already fallen over, because given the chaos the officers "could reasonably have believed that

22  Plaintiff intentionally knocked over the motorcycle and therefore . . . there was probable cause to

23  believe [the plaintiff]" violated the vandalism statute.  Id.  The court concluded that all of the

24  arresting officers were entitled to qualified immunity.  Id. at *22.  The court thus found qualified

25  immunity even though there was no "confession" or other evidence of plaintiff's having an

26  "intent" to damage the motorcycle, and the court focused instead upon the officers' reasonable

27  beliefs given the chaotic circumstances at the time of the arrest.

28  ////

1    Therefore, under <u>Burdett</u>, a confession or other similar "intent" evidence is not necessarily

2    required for probable cause to arrest for vandalism.  In the instant case, the Video, Nolen's

3    statements to Machado, Machado's beliefs given the circumstances, and plaintiff's own

4    statements indicating a possible motive for his alleged vandalism (frustration at losing money),

5    indicate that a "reasonable officer" in Officer Machado's position could have believed the arrest

6    was lawful, even in the absence of an unambiguous "confession."  <u>See</u> <u>al-Kidd</u>, 131 S. Ct. at

7    2083-84.

8                                    i.  <u>Cashman</u>

9    The <u>Cashman</u> case is perhaps the most instructive precedent here, given that it involves a

10   plaintiff claiming that while he or she did damage property, the damage was only *accidental*.  <u>See</u>

11   <u>Cashman</u>, 2011 WL 5413333 at *1-3.

12   In <u>Cashman</u>, a San Diego high school student was arrested after she "went on an allegedly

13   unauthorized 'joyride' in a school golf cart" and crashed, causing $466 in damage to the vehicle.

14   <u>Id.</u> at *1.  Subsequently, the student filed a lawsuit against Officer Montana, the arresting officer,

15   alleging violation of 42 U.S.C. § 1983, unreasonable seizure, false arrest, and malicious

16   prosecution.  <u>Id.</u>  In response, Officer Montana filed a motion for partial summary judgment,

17   arguing that "all of the Section 1983 claims fail because" Officer Montana is "entitled to qualified

18   immunity from liability."  <u>Id.</u> at *2.  In analyzing Officer Montana's qualified immunity defense,

19   the court stated that "immunity . . . hinge[s] on the existence of probable cause."  <u>Id.</u>

20   The plaintiff in <u>Cashman</u> claimed that no probable cause to arrest existed because she

21   "had no intent to commit" vandalism and that the damage to the golf cart was just an "accident."

22   <u>Id.</u> at *3.  The plaintiff told the arresting officer that "she was helping a visiting coach deliver

23   track equipment to his car, and the accident occurred while she was returning to the track field."

24   <u>Id.</u>  In rejecting plaintiff's argument that the officer arrested her for "an accident" and without

25   probable cause as to her "intent" to damage property, the court found that "Officer Montana was

26   *free to disbelieve* [the student's] statement [that the damage was accidental], *given the other facts*

27   *he knew at the time*."  <u>Id.</u> (emphasis added).

28   ////

1     The court examined the facts Officer Montana knew before he arrested the student and

2  found that:

> 3  • The school custodian told him a student had stolen a golf cart and
>    crashed it.
> 4  • The track coach said [the plaintiff] had taken the golf cart without
>    his permission, and that another student had been in the golf cart
> 5  with [the plaintiff]. The track coach confirmed that [the plaintiff]
>    had crashed the golf cart.
> 6  • One of the students who had express permission to drive the golf
>    cart said he had not given [the plaintiff] permission to drive it.
> 7  • Delinda Tamagni, an athletic trainer for the girls' track team,
>    stated that [the plaintiff] called her the night of the track meet and
> 8  apologized for "being stupid and screwing around," and that [the
>    plaintiff] felt "really bad" about what had happened.
> 9  • The cost to repair the golf cart was $466.
>    • Connie Quach, the student in the golf cart with [the plaintiff], told
> 10  him that she saw [the plaintiff] driving the golf cart and got in the
>    passenger seat, and that [the plaintiff] indicated she knew they
> 11  should not be in the golf cart.

12  Id. at *2-3.  The court stated that, "[g]iven this evidence, the [c]ourt finds that based on the facts

13  he knew at the time, Officer Montana had probable cause to arrest [the student] for joyriding and

14  vandalism."  Id. at *3.  The court granted summary judgment in favor of defendant, finding

15  probable cause for the arrest and concluding that "plaintiff's arguments regarding [an] alleged

16  lack of intent are not persuasive."  Id.

17     Notably, none of these "other facts" (id. at *3) conclusively showed that the Cashman

18  plaintiff intended to damage the golf cart.  The arresting officer in Cashman learned from a

19  witness that the plaintiff had apologized for "being stupid and screwing around," but this apology

20  was not necessarily an admission that the plaintiff purposefully intended to damage the golf cart.

21  The arresting officer in Cashman learned from a witness that the plaintiff did not have permission

22  to drive the golf cart and she "indicated she knew [she] should not be in the golf cart," but neither

23  fact necessarily speaks to whether plaintiff purposefully intended to damage the golf cart.  Yet the

24  court in Cashman found that these "other facts" were sufficient to amount to probable cause to

25  arrest the plaintiff for vandalism, even though such arrest required the officer to "disbelieve" the

26  plaintiff's explanation that the damage was only "accidental."  Id.  In sum, in Cashman, where it

27  was undisputed that plaintiff had damaged the property, and where the plaintiff told the arresting

28  officer that the damage was only accidental, the court nevertheless found that probable cause

existed for a vandalism arrest given all the facts and circumstances known to the arresting officer, even going so far as to find that the arresting officer was "entitled to disbelieve" plaintiff when she said that the damage was "an accident."  Id.

The court in Cashman also applied its probable cause finding to the issue of qualified immunity, explaining that "[t]he 'dispositive inquiry' is whether it would be 'clear to a reasonable officer that his conduct was unlawful' under the circumstances."  Id. at *3 (citing Ramirez v. City of Buena Park, 560 F.3d 1012, 1020 (9th Cir. 2009)).  The court added that it "must objectively analyze 'what a reasonable officer in the defendant's position would believe.'"  Id.  Thus, "qualified immunity will protect Officer Montana . . . as long as it was objectively reasonable for [him] to believe that [he] had probable cause to arrest" the student.  Id.  Based on the facts known to the officer at the time of the arrest, it was "objectively reasonable for Officer Montana . . . to believe the arrest was lawful," the court found that Officer Montana "was entitled to qualified immunity from liability."  Id.

Analogizing to the instant case, the facts known to Officer Machado prior to plaintiff's arrest are similar to the facts known to Officer Montana prior to the student's arrest in Cashman. Just as Officer Montana spoke to a school custodian concerning the golf cart crash (see Cashman, 2011 WL 5413333, at *2), it is undisputed that Officer Machado learned from casino employee Donald Nolan that a slot machine was damaged after coffee ended up in the machine's bill validator.  (ECF No. 22-8 at 2, RSUF No. 1.)  Moreover, Officer Machado "had received information from [Nolen] in the past and believed him to be reliable and trustworthy regarding reports of criminal activity at the [c]asino."  (Id.)  Likewise, it is undisputed that Nolen told Officer Machado that the damage to the slot machine was approximately $800 (ECF No. 22-8 at 2, RSUF No. 4), just as Officer Montana learned that the damage to the golf cart was $466.  See Cashman, 2011 WL 5413333, at *3.  Similarly, Officer Montana learned from two witnesses that the student had been in the golf cart prior to the accident (id.) just as Officer Machado viewed security footage showing plaintiff at the slot machine immediately before the machine's service light came on.  (ECF Nos. 22-8 at 2, 23-2 at 31, RSUF No. 5.)

////

Critically, in both cases, the plaintiffs argued that the damage they caused was "an accident," such that there was no probable cause as to their "intent" to purposefully cause damage, and thus no probable cause to arrest them for vandalism.  Compared to the evidence of "intent" that Officer Montana had in Cashman, Officer Machado arguably had more evidence of plaintiff's intent to cause damage: he had obtained statements from plaintiff revealing a possible motive for damaging the machine (i.e., plaintiff was "frustrated and upset" from "losing money" at the casino).  (SUF No. 10.)  Officer Montana had no similar evidence in Cashman, yet the court found probable cause and qualified immunity as to the vandalism arrest.  Especially in light of Cashman, then, plaintiff has not shown that the contours of the right to be arrested only with probable cause were not so "clearly established" that every reasonable officer, knowing only the undisputed facts known to Machado prior to the arrest (including plaintiff's stating that the damage was "accidental"), would know that arresting plaintiff for vandalism based upon those facts (and *without* an unequivocal confession from plaintiff) would necessarily violate plaintiff's rights.

### i.   Summary As To Qualified Immunity

It is plaintiff's burden to show that the case law concerning the right to not be arrested without probable was so clearly established that every reasonable official would have understood that arresting plaintiff for vandalism — based on the undisputed facts as Machado knew them[13] — violates plaintiff's right not to be arrested without probable cause.  See Clairmont, 632 F.3d at 1109; al-Kidd, 131 S. Ct. at 2083-84.  Given the findings in Meas, Burdett, and Cashman, plaintiff has not met that burden.  See Meas, 681 F. Supp. 2d at 1136; Burdett, 2007 WL

---

[13]   In other words, the analysis requires ignoring plaintiff's disputed "confession" but considering plaintiff's statements that he "accidentally" spilled the coffee and was "frustrated and upset" over losing money at the casino, considering Machado's belief that plaintiff was not telling the truth when he claimed the damage was accidental, and considering all the other circumstances known to Machado.  While the Separate Statement of Undisputed Facts does not expressly include the standalone "fact" that Machado disbelieved plaintiff when plaintiff described the spill as accidental, Machado's deposition testimony on this point is part of the record before the court and the court is entitled to consider it.  Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); see ECF No. 22-9 (lodging complete Deposition of Sam Machado dated October 1, 2013 ("Machado Depo."); Machado Depo. at 79-83).

1    2429426, at *20; Cashman, 2011 WL 5413333 at *1-4.

2          Given the foregoing, even assuming *arguendo* that there was no probable cause for

3    plaintiff's vandalism arrest, which the court need not decide here, defendant is entitled to

4    qualified immunity.  Plaintiff has not shown that the contours of his Fourth Amendment right

5    were so "clearly established" that every reasonable officer would know that arresting plaintiff for

6    vandalism — based upon the undisputed facts as Machado knew them prior to the arrest — would

7    violate plaintiff's rights.  See al-Kidd, 131 S. Ct. at 2083-85; Saucier, 533 U.S. at 201; Pearson,

8    555 U.S. at 231.   Accordingly, because defendant is entitled to qualified immunity in this case,

9    the undersigned grants defendant's motion for summary judgment in this regard.

10               d.  *Fourteenth Amendment Claims*

11          Defendant moves for summary judgment as to plaintiff's Fourteenth Amendment claim

12   that defendant engaged in a "coercive" interrogation and "fabricated evidence."  (Mot. for Summ.

13   J. at 11.)  Defendant argues that plaintiff has not identified evidence indicating that defendant

14   "coerced" plaintiff while questioning him, and no evidence indicating that defendant "fabricated

15   evidence."  (Mot. for Summ. J. at 11.)

16               i.  *Coercive Investigation*

17          Plaintiff alleged that defendant engaged in a "coercive" investigation that was calculated

18   to "trick and mislead."  (Compl. ¶ 18.)

19          "A coercive interrogation exists when the totality of the circumstances shows that the

20   officer's tactics undermined the suspect's ability to exercise his free will."  Cunningham v. Perez,

21   345 F.3d 802, 811 (9th Cir. 2003) (citing Haynes v. Washington, 373 U.S. 503, 513, 83 S. Ct.

22   1336, 10 L.Ed.2d 513 (1963)).

23          In response to defendant's challenge to this claim, plaintiff points to Video evidence

24   showing that defendant asked plaintiff "leading questions and prompts with no follow-up or

25   clarification questions," which plaintiff argues was coercive "especially with a suspect whom

26   [defendant] believed was a non-native English speaker."  (Opp'n at 17.)  However, plaintiff failed

27   to identify any authorities suggesting that "leading questions and prompts" and a lack of "follow-

28   up or clarification questions" amounts to "coercive" questioning when directed at a "non-native

                                        24

English speaker," or that such questioning violates the Fourteenth Amendment.  Plaintiff also failed to identify what questions he claims were especially "tricky."

The only authority plaintiff cites is <u>Cunningham</u>, 345 F.3d at 811, and in that case the Court of Appeals held that an interrogation was *not coercive* where the officer: questioned a suspect for 8 hours even after the suspect denied guilt, did not allow the suspect to "call his therapist," and told the suspect that he "has put people in prison."  <u>Id.</u> at 810-11.  The court also found in part that "emotionalism and confusion do not invalidate confessions" or render an interrogation "coercive" or undermine the suspect's "free will."  <u>Id.</u> (collecting cases with "far more outrageous" interrogation techniques) (reversing district court and granting summary judgment in favor of defendant as to Fourteenth Amendment "coercive interrogation" claim and other claims).

Here, as in <u>Cunningham</u>, taking the evidence in the light most favorable to the plaintiff and assuming that Machado did indeed ask some "leading questions," failed to ask "clarification questions," and the like during his "few minutes"[14] of questioning, plaintiff has not demonstrated that this conduct undermined plaintiff's free will.  <u>See id.</u>  Accordingly, plaintiff has not met his burden of showing that the evidence supports a "coercive interrogation" claim under the Fourteenth Amendment, and defendant is entitled to summary judgment as to this claim.

## ii.  *Fabricated Evidence*

With respect to plaintiff's claim that defendant "fabricated evidence" against him, it is true that, construed in the light most favorable to plaintiff, defendant's police report did indeed contain a statement indicating that defendant "admitted that he spilt the coffee on purpose" because "he was upset, frustrated, and had lost all his money."[15]  (Pl.'s SUF Nos. 49, 53.)  As

---

[14]  It is undisputed that defendant questioned plaintiff for "just a few minutes."  (SUF No. 31, RSUF No. 31.)

[15]  Plaintiff's briefing also references two other statements that defendant's report allegedly misattributed to plaintiff (i.e., that plaintiff "maxed out two credit cards" and was "hoping to have won big") (Opp'n at 16), yet plaintiff's Statement of Additional Undisputed Facts does not mention either of these statements and does not identify any *evidence* that plaintiff did not make them.  Indeed, the only "evidence" plaintiff provides in support of this claim are his expert witness' conclusions.  (Pl.'s SUF Nos. 50-53 (citing solely expert witness conclusions, including

1   described above, there is indeed a dispute as to what, if anything, plaintiff "admitted" in this

2   regard.

3          However, as with his briefing on the "coercive interrogation" claim, plaintiff has not

4   meaningfully discussed any legal authorities involving inaccurate police reports or deliberately

5   "fabricated evidence."  Thus, construing the evidence in the light most favorable to the plaintiff

6   and assuming that Machado did indeed inaccurately attribute at least one statement to plaintiff in

7   his report, plaintiff still has not shown that such evidence suffices to prove a violation of rights

8   under the Fourteenth Amendment.  Further, even assuming that Machado's report contained

9   inaccurate quotes attributed to plaintiff, plaintiff has not identified evidence suggesting the

10  inaccuracies were deliberate falsifications.  Plaintiff does not discuss the law on due process

11  violations in the context of inaccurate police reports.  Plaintiff also fails to show that the minimal

12  expert opinion "evidence" he identified can suffice to prove a due process violation arising from

13  "fabricated evidence."[16]  Accordingly, defendant is entitled to summary judgment as to this claim.

14          e.  *Pendant State Law Claims*

15          Jurisdiction in this case is based on the presence of a federal question, and the court has

16  supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  Under 28

17  U.S.C. § 1367(c)(3), however, a district court may decline to exercise jurisdiction over

18  supplemental state law claims if "if the district court has dismissed all federal claims over which

19  it has original jurisdiction."  Generally, "when federal claims are dismissed before trial . . .

20  pendant state claims should also be dismissed."  Religious Tech. Ctr. v. Wollersheim, 971 F.2d

21  364, 367-68 (9th Cir. 1992).

22

23  expert's conclusion that defendant's report "fabricated Mr. Vilar's statements,").)  Plaintiff has
    not identified proper evidence, such as excerpts from his declaration or deposition indicating that
24  he never actually made any such statements.  Accordingly, the court will not consider the
    Opposition's passing references to "maxed out" credit cards and hoping to have "won big" as
25  actual evidence supporting the claim of fabricated evidence.

26  [16]  Plaintiff's sole "evidence" for this claim is his expert police witness' declaration that
27  defendant "fabricated" evidence by including inaccurate quotes in his report.  (Pl.'s SUF Nos. 51-
    53.)  This is a legal conclusion, however, and the expert's opinion on this matter is not truly
28  "evidence."

1    Defendants' motion for summary judgment requests the court's decision on plaintiff's

2    state law claims of battery, violation of the Bane Act, and false arrest.  Under 28 U.S.C. §

3    1367(c)(3), however, a district court "may decline to exercise supplemental jurisdiction over a

4    [state] claim" when "all claims over which is has original jurisdiction" have been dismissed.

5    "[D]iscretion to decline . . . supplemental jurisdiction over state law claims is triggered by the

6    presence of one of the conditions in § 1367(c)[;] it is informed by the . . . values of economy,

7    convenience, fairness and comity" as delineated by the Supreme Court in United Mine Workers

8    of Am. v. Gibbs, 383 U.S. 715, 726 (1966).  Acri v. Varian Associates, Inc., 114 F.3d 999, 1001

9    (9th Cir. 1997) *supplemented on other grounds by* 121 F.3d 714 (9th Cir. 1997).  "[I]n the usual

10   case in which all federal-law claims are eliminated before trial, the balance of factors will point

11   towards declining to exercise jurisdiction over the remaining state-law claims."  Id. (quotations

12   and citation omitted).

13   Here, the balance of the factors of "judicial economy, convenience, fairness, and comity

14   [do] not tip in favor of retaining the state-law claims;" given the propriety of entering summary

15   judgment for the defendant as to plaintiff's federal claims.  Oliver v. Ralphs Grocery Co., 654

16   F.3d 903, 911 (9th Cir. 2011) (internal quotations omitted); Sanford v. MemberWorks, Inc., 625

17   F.3d 550, 561 (9th Cir. 2010) (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7

18   (1988)).  Accordingly, because the court grants summary judgment as to plaintiff's federal claims

19   for relief, there is no longer any federal claim left in this case, and the court declines to exercise

20   supplemental jurisdiction over plaintiff's state-law claims.

21   IV.    CONCLUSION

22   For all the foregoing reasons and those stated on the record during the hearing, IT IS

23   HEREBY ORDERED THAT:

24   1.  Defendant's motion for summary judgment (ECF No. 22) is granted as to the Fourth

25       Amendment claim pursuant to the doctrine of qualified immunity.

26   2.  Defendant's motion for summary judgment is granted as to the Fourteenth Amendment

27       claims for coercive interrogation and fabricated evidence.  Even if all the evidence is

28       construed in plaintiff's favor, plaintiff has not shown that such evidence (i.e., asking

leading questions, failing to follow-up with clarification questions, and including misquotes in a police report) suffice to amount to a constitutional violation.

3. Defendant's Request for Judicial Notice (ECF No. 22-3) is denied as moot.

4. Pursuant to plaintiff's statement of limited non-opposition (ECF No. 23 at 23) to the motion for summary judgment, the following claims are deemed voluntarily dismissed: "Fourth Amendment claim of excessive force;" "Fourteenth Amendment claim of violation of due process arising from the absence of a Tagalog interpreter;" "Monell claim against the municipal entities;" "State claim for negligence;" and "State claim for intentional infliction of emotional distress."

5. Given that the court enters summary judgment for the defendant as to plaintiff's federal claims, the factors of judicial economy, convenience, fairness, and comity do not tip in favor of this court retaining the state-law claims, see Oliver, 654 F.3d at 911, and such claims are dismissed without prejudice to plaintiff's seeking recovery for them in state court. 28 U.S.C. § 1367(c)(3).

6. The Clerk of the Court is directed to close this case and vacate all future dates.

IT IS SO ORDERED.

Dated:  December 6, 2013

_Kendall J. Newman_
_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE